## PEOPLE *v.* HENDERSON

1. CRIMINAL LAW—DISCHARGE OF COUNSEL—RIGHT TO REPRESENT SELF—CONSTITUTIONAL LAW.

   A defendant was not denied his constitutional right to discharge his attorney and proceed *in propria persona* even though the defendant indicated his displeasure with his attorney where the defendant was told by the court that he could not pick and choose appointed counsel, the defendant indicated that he was not asking to choose any particular lawyer, the defendant was informed by the court of his right to discharge his attorney and defend himself, but the defendant merely stated he was not ready for trial.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 7 Am Jur 2d, Attorneys at Law §§ 138–147.
   21 Am Jur 2d, Criminal Law § 310.
[2] 53 Am Jur, Trial § 27.

2. CRIMINAL LAW—RIGHT TO REPRESENT SELF—DEMAND.

   A criminal defendant's expressing his displeasure with appointed counsel does not necessarily mean that the defendant is demanding to proceed *in propria persona.*

3. CRIMINAL LAW—DISCHARGE OF COUNSEL—RIGHT TO REPRESENT SELF—APPEAL AND ERROR—STANDARD OF REVIEW.

   An appellate court must extend reasonable deference to the trial judge when reviewing a defendant's claim that he was denied his constitutional right to discharge his attorney and proceed *in propria persona,* because the trial judge was present during the exchange to observe the expressions, gestures, and other nonverbal indications of the defendant's intent.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 December 8, 1970, at Detroit. (Docket No. 8763.) Decided February 18, 1971.

Alex Stamp Henderson was convicted of entry without breaking with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant on appeal.

Before: LEVIN, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. Defendant appeals as of right from his conviction by a jury of entry without breaking

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

with intent to commit larceny therein, MCLA § 750-.111 (Stat Ann 1970 Cum Supp § 28.306).

The sole issue on appeal arises from the following exchange which occurred just before the trial was to begin:

*"The Court:* Bring in the jury.

*"The Defendant:* Your Honor, can I say something?

*"The Court:* Come up to the microphone.

[*Whereupon the defendant came forward.*]

*"The Defendant:* Your Honor, I wish that my attorney be taken off my case. I don't want him to represent me.

*"The Court:* Any other request?

*"The Defendant:* No.

*"The Court:* Why is it you don't want him to represent you?

*"The Defendant:* Because we can't get an understanding.

*"The Court:* Understanding about what?

*"The Defendant:* About the case and certain procedures and different things.

*"The Court:* What procedures?

*"The Defendant:* Procedures through trial.

*"The Court:* I can't hear you.

*"The Defendant:* The procedures through—during the trial.

*"The Court:* Well, what procedures? We haven't even started the trial.

*"The Defendant:* That's what I know, and he can't tell me nothing.

*"The Court:* I am still trying to find out—

*"The Defendant:* I have been over to the county jail since May, and I didn't see him till this month. And I didn't have a court date then, and I had to go about getting me a court date. And he didn't know no more about the case than he knowed the first day he was assigned to it the first time I saw him.

*"The Court:* Mr. Resh, didn't you represent him at the preliminary examination?

*"Mr. Resh:* Yes, your Honor.

*"The Court:* That's what the file indicates. I don't know why he says you don't know anything about the case.

*"The Defendant:* I asked him. He didn't know nothing.

*"The Court:* Well, Mr. Henderson, today is the day fixed for trial in your case, and we are going to trial. When you get to the place where you are able to employ your own counsel, then you can dictate who shall represent you.

*"The Defendant:* I am not saying who.

*"The Court:* But until that day arrives, I am afraid that the court shall have to decide who is competent to represent you and appoint counsel for you. And that was done by Judge Colombo by order on May 23, I think, 1969.

"You have a constitutional right, however, to defend yourself. You don't have to have a lawyer. You can defend yourself. All I am telling you is that we are not going to adjourn the trial and I am not going to relieve Mr. Resh and appoint another lawyer.

"Are we ready for trial?

*"Mr. Resh:* I am your Honor.

*"The Defendant:* No, I am not ready for trial, your Honor.

*"The Court:* Well, you're going to trial. Bring in the jury."

Defendant contends on appeal that he has been denied his constitutional right to discharge his attorney and proceed *in propria persona.* He argues that, although he did not specifically demand to proceed without an attorney, the above exchange is sufficient to bring this case within the holding of *People* v. *Felton Alexander* (1969), 17 Mich App 497.

In the *Alexander* case this Court ruled that a defendant untrained in legal matters need not spe-

cifically state that he wants to act as his own attorney and where it can reasonably be inferred that the defendant has manifested such a desire the court should ask him whether he wants to discharge his attorney and who will now conduct the defense.

In *Alexander* the defendant had asked if he could pick the jury himself, and being told that he would have to work through his attorney stated that he did not have an attorney, in his opinion, and was not going to work with him. This Court ruled that the defendant in *Alexander* had clearly indicated that he wished to discharge his attorney and proceed alone.

In the instant case, defendant indicated his displeasure with his attorney and being told that he could not pick and choose appointed counsel indicated that he was not asking to choose any particular lawyer. The court then specifically informed the defendant of his right to discharge his attorney and defend himself. Defendant merely stated that he was not ready for trial.

We do not require that the defendant utilize any particular "magic words" to call his right into play, but neither can we say that whenever a criminal defendant expresses displeasure with appointed counsel he is thereby demanding to proceed in proper person. The judge suggested such a procedure and indicated that he would honor defendant's right to defend himself without a lawyer. Defendant said nothing to indicate that he wanted to do this.

We must extend reasonable deference to the trial judge who was present during the exchange to observe the expressions, gestures, and other non-verbal indications of defendant's intent and who was thoroughly familiar with defendant's right to represent himself. The trial judge concluded that de-

fendant was merely demanding a different appointed counsel and did not demand the right to defend himself. On a cold appellate record which is, at the very best, equivocal we decline to substitute our distant judgment for that of the trial court.

In our system under which we attempt to furnish indigent defendants with counsel at public expense, we cannot paralyze a docket by permitting a defendant to run a gamut of choice until some given attorney accords with his view of what is "competent" counsel. See *People* v. *Henley* (1969), 382 Mich 143.

We mention also, parenthetically, that defendant was apprehended while in immediate flight from the involved premises.

It would require an exercise in appellate hallucination to find any suspicion of a miscarriage of justice which would justify setting the verdict of the jury aside. (See *People* v. *Dunn* [1968], 380 Mich 693; *People* v. *Winegar* [1968], 380 Mich 719.)

Defendant also alleges that his appointed counsel was so inadequate as to deny him his constitutional right to effective assistance of counsel. We have carefully read the record in this case and considered defendant's allegations of mistakes and lack of preparation and diligence. There was no inadequacy of counsel within the standards set forth in *People* v. *Degraffenreid* (1969), 19 Mich App 702.

Affirmed.

All concurred.