PEOPLE v KIRKLAND

OPINION OF THE COURT

1. CRIMINAL LAW—RIGHT TO REPRESENT SELF—LIMITATION OF RIGHT—PUBLIC INTEREST—FAIR TRIAL.

The right of an accused to represent himself at trial is not absolute when it conflicts with the interest of the public in insuring a fair trial; when the right to represent oneself conflicts with the defendant's own interest in receiving a fair trial, the right may be limited.

2. CRIMINAL LAW—RIGHT TO REPRESENT SELF—DISCHARGE OF COUNSEL—FAIR TRIAL.

A trial judge has a duty to accommodate both the defendant's right to represent himself and the defendant's right to be represented by counsel, at public expense if necessary, to the end of achieving a fair trial; while the right to counsel may be waived, it is always the duty of the trial judge to determine whether the waiver is voluntarily and intelligently made.

3. CRIMINAL LAW—RIGHT TO REPRESENT SELF—DISCHARGE OF COUNSEL.

Denying defendant's motion to discharge appointed counsel and defend himself was not error where the defendant wanted counsel discharged because he had not located three alibi witnesses, the attorney made attempts to locate the witnesses, two of whom were believed overseas and the other, a prostitute with no known address, the case was very difficult to defend in that the evidence was overwhelmingly against the defendant, the court concluded that the defendant could not adequately defend himself, the record shows that counsel vigorously defended his client, and the court allowed defendant to ask questions if he wanted to do so.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 6, 7] 21 Am Jur 2d, Criminal Law § 310.
[2] 21 Am Jur 2d, Criminal Law §§ 311, 317.
[5] 21 Am Jur 2d, Criminal Law § 313.

DISSENT BY LESINSKI, C. J.

4. CRIMINAL LAW—RIGHT TO REPRESENT SELF.

*A person charged with a crime has a right to defend himself; but after trial has begun, the right to conduct one's own defense is not absolute but qualified (Const 1963, art 1, § 13; MCLA 763.1).*

5. CRIMINAL LAW—RIGHT TO REPRESENT SELF—DISCHARGE OF COUNSEL.

*A defendant's request to represent himself must be granted when the request is unequivocally made before the jury has been chosen and the trial begun.*

6. CRIMINAL LAW—RIGHT TO REPRESENT SELF—DISCHARGE OF COUNSEL —COMPLEXITY TEST.

*A defendant's right to represent himself does not depend on whether the trial court concludes that the defendant would be unable to represent himself fairly in light of the complexity of the case, because it is difficult to conceive of a situation where a defendant would be more skilled than his appointed counsel in the intricacies of courtroom procedure.*

7. CRIMINAL LAW—RIGHT TO REPRESENT SELF—PREJUDICE.

*A defendant is not required to show prejudice when his constitutional rights have been violated; a denial of a defendant's right to represent himself is not justified by his appointed counsel's vigorous defense or the complexity of the case.*

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 February 2, 1972, at Detroit. (Docket No. 10159.) Decided April 24, 1972.

Leroy Kirkland was convicted of breaking and entering a building with intent to commit a felony and possession of burglary tools. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D.*

*Dockett,* Assistant Prosecuting Attorney, for the people.

*Burton L. Borden,* for defendant on appeal.

Before: LESINSKI, C. J., and J. H. GILLIS and QUINN, JJ.

J. H. GILLIS, J. Defendant Leroy Kirkland was convicted by a jury of breaking and entering a building with intent to commit a felony, MCLA 750.110; MSA 28.305, and possession of burglary tools, MCLA 750.116; MSA 28.311. From these convictions, defendant appeals as of right.

Defendant's sole allegation of error is that the trial court committed reversible error by refusing his request to defend himself *in propria persona.*

Defendant was given assigned counsel, Mr. Arthur Arduin, immediately after his arraignment on February 4, 1970. Mr. Arduin represented the defendant at his preliminary examination and appeared with him when the case was assigned for trial on May 21, 1970.

Before the jury was selected, defendant addressed the trial judge, Judge Davenport, as follows:

"*Defendant:* With all due respect to the court I would like to ask for a change of counsel, please.
"*The Court:* Will you hire your own?
"*Defendant:* I am not able to."

The court explained the difficulty of assigning different counsel, and asked the defendant to explain why he did not want Mr. Arduin. The defendant stated, "I cannot communicate with my lawyer". In the colloquy that follows, defendant's dissatisfaction appeared to be based on Mr. Ar-

duin's inability to locate three alleged alibi witnesses, two of whom were thought to be overseas in the Marine Corps, and a third who was a prostitute with no known address. Defendant had apparently advised Mr. Arduin that he would have the woman contact him, which she failed to do. Mr. Arduin explained that he had made four separate trips to a bar that she allegedly frequented in order to locate her. He further indicated that he had conferred with his client on numerous occasions in the county jail. There were additional written communications between counsel and defendant.

After considerable discussion, the trial judge concluded that there was no evidence to justify discharging assigned counsel. Court was then adjourned with the announcement that trial would start the following morning.

The next morning, defendant requested an adjournment so that he could obtain sufficient funds to hire his own attorney. The judge stated that the trial would proceed, and further commented that he had the overall impression that the defendant just didn't want to go to trial. The defendant quite candidly admitted, "That may be true". The defendant then stated that he would like to represent himself because he did not have confidence in his attorney, and did not trust him.

The trial judge advised the defendant that he could represent himself if he wanted to, but that he would have the lawyer sit with him to advise him, and that the defendant could ask questions if he so desired.

In response to the prosecutor's query as to whether defendant would represent himself, the judge declared that the defendant would be unable to do so because he did not know enough to try his

own case, but that he could confer with his lawyer about questions he wanted asked.

It was apparent to the trial court that this was a case that would be most difficult to defend. The defendant was observed by police officers exiting the rear door of a florist shop, crowbar in hand, and was apprehended hiding under a porch after a short chase. The outer door and an inner office door in the shop had been pried open, and numerous burglar tools were found at the scene. Defendant admitted that he had been in the area but stated that he had run and attempted to hide under the porch when someone "hollered 'Police' ". He ran because he had just left an after-hours drinking establishment, and was afraid that he would be apprehended and charged with violating his parole. Defendant had prior convictions for burglaries and receiving stolen property.

In these circumstances, the trial judge had ample reason to conclude that the defendant would be unable to fairly represent himself. There can be no argument that counsel's work was excellent throughout the trial, especially in light of the overwhelming evidence against the defendant.

The right of the accused to represent himself at trial is not absolute when it conflicts with the interest of the public in ensuring a fair trial. For instance, the right has been held to be limited, if asserted after trial has commenced, in the interest of preventing obstruction of criminal justice by the calculated manufacture of new hindrances and novel speculations of error. *People v Henley,* 382 Mich 143 (1969).

When it conflicts with the defendant's own interest in receiving a fair trial, his right to represent himself may be likewise limited. Certainly of equal importance to the accused is the right to be repre-

sented by counsel, at public expense if necessary. It falls on the trial judge in the first instance to attempt to accommodate both of these equally important rights, to the end of achieving a fair trial. While the right to counsel may be waived, it is always the duty of the trial court to determine whether the waiver is voluntarily and intelligently made.

The tentative draft of the American Bar Association Standards relating to the function of the trial judge offers sound guidelines:

"A defendant should be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the court makes thorough inquiry and is satisfied that he

"(a) possesses the intelligence and capacity to appreciate the consequences of his decision; and

"(b) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.

"*Commentary*

"Although Federal statutes (28 USC § 1654) and many state constitutions, *e.g.*, Art 1, § 9, Constitution of Pennsylvania, authorize defendants in criminal cases to represent themselves, the right is not absolute. The defendant's Sixth Amendment right to the assistance of counsel cannot be abrogated unless knowingly and intelligently waived, however strongly the defendant may desire to proceed alone. See *Von Moltke v Gillies,* 332 US 708 (1948); ABA Standards, Providing Defense Services, §§ 7.1–7.3 (Approved Draft, 1968). Particularly when a trial is involved, the interest of the public in an orderly, rational trial is entitled to consideration in determining the defendant's right to appear *pro se.* See *United States v Bentvena,* 319 F2d 916, 937 (2d Cir 1963); *Butler v United States,* 317 F2d 249, 258 (8th Cir 1963).

"A fair trial is impossible if a defendant is tried for a crime while denied counsel. *Gideon v Wainwright,* 372

US 335 (1963). This is so for the reason that, except in most unusual circumstances, a trial in which the accused is unrepresented by counsel is a farcical effort to ascertain guilt. No intervention by the trial judge on behalf of the accused can eliminate the need for competent counsel. *Cf. Powell v Alabama,* 287 US 45, 69 (1932).

"Most defendants who seek to appear *pro se* do so in ignorance of the value of counsel and of their own inadequacies, or out of paranoid distrust of appointed counsel. More sophisticated motives may include the hope that the absence of counsel may afford a basis for reversal of a conviction regarded as inevitable, or a desire to ventilate societal hostility through the dramatic vehicle of a disorderly trial. See generally, Laub, *The Problem of the Unrepresented, Misrepresented and Rebellious Defendant in Criminal Court,* 2 Duquesne L Rev 245 (1964). None of these sources of the desire to dispense with counsel outweigh the rights of codefendants, or the interest of the public in a just and orderly trial. Nor do they require the court to disregard the long-term interest of the accused in having guilt or lack of guilt fairly determined." ABA Project on Standards for Criminal Justice: Standards Relating to the Judge's Role in Dealing With Trial Disruptions, Standard C.2 and commentary, pp 10, 11 (Tentative Draft, May 1971).

In the instant case, the trial judge conducted a thorough inquiry, and after considering the complexity of the case and the difficulties of conducting the defense, concluded that the defendant would be unable to fairly represent himself.

The record confirms the accuracy of this conclusion. Trial counsel took advantage of every opportunity, by motion, examination, and cross-examination to protect the defendant's interest. Defendant, unskilled in the law, could not have performed this service for himself. The trial judge was in the best position to make that determination; indeed, it was his duty to do so. By clearly advising the defendant that he could ask questions if he

so desired, yet requiring assigned counsel to conduct the defense, the trial judge achieved the fairest accommodation of the conflicting interests at stake here.

*People v Fred Smith,* 22 Mich App 22 (1970), was a case remarkably similar to the instant case. The sole issue raised was the same. There, on the date set for trial and prior to the selection of the jury, defendant indicated to the trial court that he was dissatisfied with his assigned counsel. No dissatisfaction with or objection to assigned counsel was made thereafter by the defendant despite the fact that the trial continued for several days. The same is true in the instant case. A careful examination of the record here of necessity leads us to the conclusion that the defendant did not unequivocally request that he be permitted to conduct his own defense and the trial court did not err in allowing previously assigned counsel to continue to represent the defendant during his trial. Compare *United States ex rel Maldonado v Denno,* 348 F2d 12, 15–16 (CA 2, 1965), *cert den* 384 US 1007; 86 S Ct 1950; 16 L Ed 2d 1020 (1966); *People v Henley, supra.*

Affirmed.

QUINN, J., concurred.

LESINSKI, C. J. *(dissenting).* Defendant Leroy Kirkland was convicted by a jury of breaking and entering in the nighttime with intent to commit a felony, MCLA 750.110; MSA 28.305, and possession of burglary tools, MCLA 750.116; MSA 28.311. From the trial court's denial of his motion for a new trial, defendant appeals as of right.

Defendant alleges that the trial court committed error by refusing his request to proceed to trial on the charges *in propria persona.* The record below

reveals that defendant asked for permission to serve as his own attorney on the second day of trial in this matter, but before the jury had been selected. The only issue discussed during the first day of trial was defendant's request for a change in his appointed counsel, which request the trial court denied.

On the morning of the second day set for trial, defendant initially asked for a continuance so that he might attempt to gather sufficient funds to hire his own attorney. After the trial court denied defendant's entreaty, the following colloquy transpired:

"*The Defendant:* I would like to ask the court if I could represent myself because I don't have confidence in my present attorney, my court-appointed attorney and I don't trust him and I don't see why I should go to trial with him.

"*The Court:* You didn't tell me you didn't trust him yesterday, you said you couldn't communicate with him. Try another one.

"Well, no, we are going to trial. You let him sit there because you have got to have somebody to advise you. I am going to let him sit there. You can ask questions if you want.

"*The Defendant:* I can't accept his advice when I don't trust him.

"*The Court:* Sit down, please, please, please, we are going ahead with this trial. You didn't tell me that yesterday. Every day you come up with a new tactic. You never told me that yesterday.

"*The Defendant:* I told you I couldn't communicate with him, that's the only way I can explain it.

"*The Court:* I know you said that yesterday but you never told me you didn't trust him, you never told me that until now when we are ready to go to trial so we will go ahead with this trial. If you want to you can represent yourself; you can have the file and put your appearance in but I would let the lawyer sit there and I

am going to pay him for his services, at least we will
order the county to pay him for his services but I am
going to leave him sitting there and make it known
that you want to conduct your own case but I will leave
the lawyer sitting there. * * *

"*Mr. Gibbs [prosecutor]:* Is it my understanding that
this [is] *in propria?*

"*The Court:* No, he doesn't know enough about it to
try his own case, but he certainly can confer with his
lawyer about the questions he wants asked."

One charged with a crime in this state has a
right to defend himself pursuant to Const 1963, art
1, § 13; and MCLA 763.1; MSA 28.854. After trial
has begun, however, the right of defendant to
conduct his own defense is not absolute but quali-
fied. The Michigan Supreme Court recognized in
*People v Henley,* 382 Mich 143, 148 (1969), that to
allow a defendant to dismiss his attorney and
proceed *in propria persona,* once trial was well
under way, "would surely invite into regular prac-
tice the obstruction of criminal justice by the
calculated manufacture of new hindrances and
novel specifications of error". As authority, the
Court relied on *United States v Bentvena,* 319 F2d
916 (CA 2, 1963), which distinguished between the
*absolute right* to proceed without an attorney and
conduct one's own defense, and the *qualified right*
to discharge counsel once trial had begun.

In *People v Payne,* 27 Mich App 133 (1970), this
Court was confronted with a factual situation
similar to the instant case. Defendant, in *Payne,*
had requested at the beginning of the trial that his
court-appointed attorney be dismissed, and that he
be allowed to conduct his own defense. The jury,
as in this case, had not yet been selected.

The *Payne* holding relied on *United States ex
rel Maldonado v Denno,* 348 F2d 12 (CA 2, 1965),
*cert den* 384 US 1007; 86 S Ct 1950; 16 L Ed 2d

1020 (1966), in affirming defendant's conviction, because defendant did not unequivocally state that he wanted to defend himself. With this exception, however, the *Maldonado* opinion stated, as the *Payne* Court emphasized, that *defendant's right remained unqualified prior to the selection of the jury.* As Judge Waterman pointed out in *Maldonado, supra,* p 16, there is "no danger of disrupting proceedings already in progress" if defendant makes an unequivocal request to defend himself before the jury has been chosen.

It is the opinion of this writer that *Payne* dictates reversal in this case. The jury had not yet been selected. Defendant's request to represent himself was unequivocal.[1] Further, our examina-

_____

[1] The majority opinion states that defendant "did not unequivocally request that he be permitted to conduct his own defense", and cites as authority the case of *People v Fred Smith,* 22 Mich App 22 (1970). *Smith* is not on point. In *Smith,* defendant, as in the instant case, requested a change of appointed counsel prior to the selection of the jury. However, the *Smith* defendant did not then request that he be allowed to conduct his own defense, as did this defendant. In this case, following a long exchange between defendant and the trial court concerning his request to represent himself, in which the trial court attempted to dissuade defendant from serving as his own counsel, the trial court informed the prosecutor that defendant would not be allowed to proceed to trial on the charges *in propria persona,* because he "doesn't know enough about it."

In *United States ex rel Maldonado v Denno,* 348 F2d 12 (CA 2, 1965), *cert den* 384 US 1007 (1966), also cited by the majority, the Court ruled that defendant Maldonado had made an unequivocal request to represent himself, that the trial court had erroneously denied the request, and that defendant's conviction must be reversed as a result thereof. After Maldonado had first asked that he be assigned different appointed counsel, and the trial court had rejected that petition, the following exchange occurred:

*"Defendant Maldonado:* Your Honor, if I feel that the case must go on, I want to be able to act as my own attorney. Would you give me that permission, sir?

*"The Court:* No, no. You sit down, mister. You have got a lawyer, a good lawyer, and he is going to try your case. Now sit down." *Maldonado, supra,* p 15.

In the case at hand, defendant's request was as unequivocal as Maldonado's, as indicated by the trial record:

*"The Defendant:* I would like to ask the court if I could represent

tion of the record reveals that his defense was conducted entirely by court-appointed counsel, consistent with the trial court's statement to the prosecutor before the commencement of the *voir dire.*

However, the majority in this case ignores the language from *Bentvena* that was quoted by our Supreme Court in *Henley.* Under the majority holding, defendant's right to represent himself, when exercised before trial has begun, is no longer absolute "when it conflicts with the interest of the public in ensuring a fair trial". That interest, in the majority's view, apparently takes precedence over the right of the accused to defend himself at trial, whenever the trial court concludes that "defendant would be unable to fairly represent himself", in light of the complexity of the case.[2] Moreover, the decision relies on the legal acumen exhibited by defendant's appointed counsel at trial as support for the proposition that defendant would be unable to fairly represent himself, pointing out that defendant, being unskilled in the law, could not have taken advantage of every opportunity to protect his interests by way of motion, objection, and examination.

Yet, it is difficult to conceive of a situation when

myself because I don't have confidence in my present attorney, my court-appointed attorney and I don't trust him and I don't see why I should go to trial with him."

Defendant's request was unequivocal on authority of *Maldonado,* notwithstanding the majority's contention on this point.

[2] The majority appears to arrive at the conclusion that this case was complex, because "of the overwhelming evidence against the defendant". However, as was stated by the California Court of Appeal in *People v Addison,* 256 Cal App 2d 18, 24; 63 Cal Rptr 626, 629, note 3 (1967):

"The truth of the matter is that there are many cases so utterly hopeless from the defendant's point of view that—at least on the question of guilt or innocence—there is nothing the most competent attorney can do for him. If he decides that his only chance is the 'hope that the jury will be sympathetic toward a layman who pits himself against the Goliath of the state * * * ,' whence comes the right of the court to deprive him of his choice?"

defendant would be more skilled than his appointed counsel in the intricacies of courtroom procedure. Under this test, the defendant's absolute right to represent himself becomes almost no right at all. This result obtains, despite the clear constitutional guaranty that a "suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney". Const 1963, art 1, § 13.

The United States Supreme Court, addressing this problem in *Adams v United States ex rel McCann,* 317 US 269, 279; 63 S Ct 236, 241–242; 87 L Ed 268, 274–275 (1942), stated:

"The right to assistance of counsel and *the correlative right to dispense with a lawyer's help* are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. * * * Essential fairness is lacking if an accused cannot put his case effectively in court. *But the Constitution does not force a lawyer upon a defendant. He may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open."*[3] (Emphasis supplied.)

Mr. Justice Frankfurter, writing for the Court, reached this conclusion, despite the lack of any specific provision in the United States Constitution guaranteeing defendant the right to represent himself.[4]

---

[3] *Cf. Carter v Illinois,* 329 US 173, 174; 67 S Ct 216, 218; 91 L Ed 172, 174 (1946), where the Court stated that "[n]either the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself or to confess guilt".

[4] This is not to say that the right of an accused person to defend himself is devoid of a Federal constitutional base. See the analysis of Judge Medina in *United States v Plattner,* 330 F2d 271, 273–275 (CA 2, 1964), holding that the right to defend *pro se* is one arising out of the United States Constitution.

One argument which is implicit in the majority's opinion in the instant case is that defendant was not prejudiced by the trial court's refusal to allow him to represent himself. My colleagues point to "the overwhelming evidence against the defendant", and the excellent work performed by his appointed counsel at trial. Yet, I remind them that a defendant is not required to show prejudice, when his constitutional rights have been violated. See *United States v Plattner,* 330 F2d 271 (CA 2, 1964).

I am not unmindful of the policy considerations which underlie the American Bar Association's tentative draft, cited by my brethren, on the standards to be employed in determining whether defendant should be allowed to proceed without counsel. It is not disputed that the trial court's task is a difficult one when deciding if defendant's waiver of counsel is an intelligent and knowing one.[5] *Von Moltke v Gillies,* 332 US 708; 68 S Ct 316; 92 L Ed 309 (1948) (opinion of Black, J.); *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938). See, also, American Bar Association *Standards Relating to Providing Defense Services,* § 7.2 (Approved Draft, 1968). To state that the task is difficult in nature is not sufficient justification, however, to vitiate by judicial fiat a defendant's absolute right to proceed without an attorney and conduct his own defense, as guaranteed by the Michigan Constitution.

Additionally, there are policy reasons in support of our constitutional provision, as it now reads. As

---

[5] "When a trial court is confronted with a defendant who asserts his desire to waive counsel, it must steer carefully between the Scylla of denying the defendant's substantial right to determine his own fate and the Charybdis of violating the constitutional right to counsel of a person who does not validly waive this right." Note, *The Right of an Accused to Proceed Without Counsel,* 49 Minn L Rev 1133, 1141 (1965).

was stated by the Court in *United States ex rel Maldonado, supra,* p 15, defendant:

" '[M]ust have the means of presenting his best defense,' and to this end he 'must have complete confidence in his counsel.' Without such confidence a defendant may be better off representing himself. Moreover, even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice 'with eyes open.' "

The California Court of Appeal, in *People v Addison,* 256 Cal App 2d 18, 24; 63 Cal Rptr 626, 629 (1967), pointed out that it was possible for a defendant to make an intelligent waiver of his right to counsel without a knowledge of legal procedures on his part, stating that:

"If the defendant wants to venture into the unknown, he must be allowed to do so, if he is aware of the dangers that lurk therein. He need not demonstrate that he can meet them."

See, also, E. Wise, *1969 Annual Survey of Michigan Law: Criminal Law and Evidence,* 16 Wayne L Rev 589, 596–597 (1970); Note, *The Right of an Accused to Proceed Without Counsel,* 49 Minn L Rev 1133, 1152–1153 (1965).

Accordingly, the trial court's denial of defendant's motion for a new trial should be reversed.