PEOPLE v HOLCOMB

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL—DISCHARGE OF COUNSEL —SELF-REPRESENTATION.

The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of trial, but once the trial has begun with the defendant represented by counsel, his right to discharge his lawyer and represent himself is sharply curtailed; there must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress with considerable weight being given to the trial judge's assessment of this balance.

2. CRIMINAL LAW—SELF-REPRESENTATION.

Two primary determinations to be made when a defendant requests the right of self-representation at trial in a criminal case are (1), was the request unequivocal and (2), was the request offered prior to the commencement of trial; although a request may be inferred from defendant's inartful communications with the trial court, the court must be convinced that defendant is in fact requesting the opportunity to appear *in propria persona* and not merely requesting a substitution of attorneys.

3. CRIMINAL LAW—SELF-REPRESENTATION—FAIR TRIAL.

The timeliness of a defendant's request to represent himself at trial in a criminal case may be more precisely measured or determined by the time at which the jury is selected; once this selection process has begun, defendant's right to self-representation becomes qualified and subject to a comparison of the disruptive effect to the trial and resulting prejudice to the defendant.

4. CRIMINAL LAW—SELF-REPRESENTATION—RIGHT TO COUNSEL— WAIVER.

A defendant choosing to invoke his right of self-representation

REFERENCES FOR POINTS IN HEADNOTES
[1, 10–12, 14, 15] 21 Am Jur 2d, Criminal Law § 312 *et seq.*
[2–9] 21 Am Jur 2d, Criminal Law §§ 310, 311.
[13] 17 Am Jur 2d, Continuance §§ 3, 4.
[16] 21 Am Jur 2d, Criminal Law §§ 540, 592, 614.

must abandon his right to counsel; his waiver of counsel will not be deemed effective unless made voluntarily and intelligently, and his competency is the necessary prerequisite to a valid waiver.

5. CRIMINAL LAW—SELF-REPRESENTATION—RIGHT TO COUNSEL—WAIVER—COMPETENCE—DISCRETION.

A defendant must be competent to waive counsel before the door to his reciprocal right to self-representation at trial in a criminal case is opened, and the determination of such competency is reserved to the sound discretion of the trial judge.

6. CRIMINAL LAW—SELF-REPRESENTATION—COMPETENCE—DISCRETION.

The level of competence for each inquiry in a criminal case is not identical as a matter of law; a determination that a defendant was competent to stand trial is not dispositive of his competency to waive counsel, and the trial court is free to reach a different conclusion upon competency for different purposes where the determinations are directed at different goals and deserve individualized evaluation.

7. CRIMINAL LAW—SELF-REPRESENTATION—COMPETENCE—DISCRETION.

The momentary stability of a defendant requesting to represent himself at trial in a criminal case may not be an accurate indicator of the mental stability of a person with a history or evidence of mental problems; the delicate determinations which must be made best lie with the trial judge who observes the defendant and evaluates the evidence firsthand.

8. CRIMINAL LAW—SELF-REPRESENTATION—COMPETENCE.

A defendant should be permitted at his election to proceed in the trial of his criminal case without the assistance of counsel only after the court makes thorough inquiry and is satisfied that he (a) possesses the intelligence and capacity to appreciate the consequences of his decision, and (b) comprehends the nature of the charges and the proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.

9. CRIMINAL LAW—SELF-REPRESENTATION—LEGAL ACUMEN.

A defendant's legal acumen is not the test to determine if he is able to represent himself at trial in a criminal case, since a layman's knowledge is never comparable to that of a trained professional.

10. CRIMINAL LAW—ASSISTANCE OF COUNSEL—SUBSTITUTION OF COUNSEL—INDIGENTS.

> The rule that an irreconcilable difference creating a bona fide dispute justifies a substitution of retained counsel is no less applicable to a defendant whose indigency makes him dependent upon the state.

11. CRIMINAL LAW—DISCHARGE OF COUNSEL—SUBSTITUTION OF COUNSEL—GOOD CAUSE.

> A defendant is entitled to a substitution of appointed counsel in a criminal case when discharge of the first attorney is for "good cause" and does not disrupt the judicial process; the precise nature of the conflict which will satisfy the "good cause" standard depends upon the facts of each case.

12. CRIMINAL LAW—ASSISTANCE OF COUNSEL—SUBSTITUTION OF COUNSEL—DISCRETION.

> The task of evaluating the nature and severity of a defendant's various claims of dissatisfaction and deterioration of the attorney-client relationship and request for a substitution of counsel in a criminal case necessitates firsthand observations and the decision is posited within the trial judge's sound discretion.

13. CONTINUANCE—TRIAL—DISCRETION.

> Continuances are controlled by the sound exercise of the trial judge's discretion.

14. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE—SHAM TRIAL—MISTAKE OF COUNSEL.

> A defendant is denied the effective assistance of counsel when the entire representation of the defendant by his lawyer at trial is a farce, or a mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation, or when his constitutionally adequate lawyer makes a mistake or mistakes of such serious proportions that it may be decisive in obtaining defendant's conviction.

15. CRIMINAL LAW—WITNESSES—INSTRUCTIONS TO JURY—EFFECTIVE ASSISTANCE.

> Defense counsel's waiver of the production of witnesses and failure to request a cautionary instruction are considered matters of trial strategy, an inappropriate foundation for a claim of ineffective assistance of counsel.

16. Criminal Law—Sentences—Life Sentence—Minimum Sentence.

   A sentence of 35 years to life is invalid under the statute prohibiting the imposition of a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence (MCLA 769.9).

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 January 8, 1973, at Lansing. (Docket No. 12719.) Decided May 25, 1973. Leave to appeal granted, 390 Mich —.

Thomas Holcomb was convicted of armed robbery. Defendant appeals. Affirmed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John L. Thompson,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: Bronson, P. J., and McGregor and Danhof, JJ.

Bronson, P. J. Defendant was convicted by jury verdict of armed robbery and sentenced to serve a prison term of 35 years to life. MCLA 750.529; MSA 28.797. From this conviction defendant appeals, raising six allegations of error. After due consideration, we find that only four merit discussion. Since the issues raised are purely legal in nature, we have dispensed with a restatement of the facts.

   I. *Did the trial judge's denial of defendant's timely request to proceed* in propria persona *constitute reversible error?*

A defendant's right to proceed *in propria per-*

*sona* is constitutionally preserved[1] and statutorily implemented.[2] The invocation of this right requires an immediate appraisal of the attendant reciprocal right to counsel and the correlative considerations of due process, fair trial, and due administration of justice. It is the delicate weighing and balancing of these factors designed to preserve the integrity of our judicial system which we must perform in the instant case.

On June 15, 1971, defendant pursuant to his trial counsel's motion was committed to the Center for Forensic Psychiatry for a determination of his competency to stand trial. Defendant was subsequently found competent to stand trial and his requested jury trial scheduled. On the day of trial, prior to the selection of the jury panel, defendant requested the replacement of his court-appointed attorney with new counsel, right to defend the case himself and expressed a desire to postpone the trial. The trial judge denied each request and relied primarily upon the psychiatric report and ABA Standards relating to trial disruption to justify his denial of defendant's request to appear *in pro per.* Defendant claims that this denial of his constitutional right of self-representation invoked by an unequivocal request constituted reversible error.

---

[1] *See* Const 1963, art 1, § 13, which provides:

"A suitor in any court of this state has the right to prosecute or defend his suit, *either* in his own proper person *or* by an attorney." (Emphasis added.) This language indicates that a Michigan defendant has a state constitutional right to self-representation. *People v Henley,* 382 Mich 143 (1969); *People v Cooley,* 11 Mich App 602 (1968); *People v Payne,* 27 Mich App 133 (1970). However, the question of whether this right is rooted in the Federal Constitution is currently unsettled. *Compare People v Sharp,* 7 Cal 3d 448; 103 Cal Rptr 233; 499 P2d 489 (1972), followed in *People v Jacobs,* 27 Cal App 3d 246; 103 Cal Rptr 536 (1972), with *United States v Davis,* 260 F Supp 1009 (ED Tenn, 1966), *aff'd,* 365 F2d 251 (CA 6, 1966).

[2] MCLA 763.1; MSA 28.854.

Our Courts have established general rules controlling the invocation of this right which lend superficial support to defendant's position. In *People v Henley,* 382 Mich 143 (1969), the Court adopted the following guideline from *United States v Bentvena,* 319 F2d 916, 937–938 (CA 2, 1963):

" 'One charged with crime has an *absolute* right to do without an attorney and conduct his own defense (28 USC § 1654), but that is quite different from the right to discharge counsel after trial has begun. This latter right is a *qualified* one.' " p 148. (Emphasis added.)

This distinction between an absolute right to request self-representation prior to trial and a qualified right to discharge counsel and proceed *in pro per* subsequent to the commencement of trial was further explained in *People v Payne,* 27 Mich App 133 (1970).[3] After reaffirming the language quoted from *Bentvena,* the Court cited the following language from *United States, ex rel Maldonado, v Denno,* 348 F2d 12, 15 (CA 2, 1965), with approval:

" 'The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial. * * * Once the trial has begun with the defendant represented by counsel, however, his right to discharge his lawyer and represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance.'

* * *

" 'If an unequivocal request were not required, convicted criminals would be given a ready tool with which

---

[3] *See, also, People v Felton Alexander,* 17 Mich App 497 (1969); *People v Pruitt,* 28 Mich App 270 (1970); *People v Armstrong,* 28 Mich App 387 (1970); *People v Henderson,* 30 Mich App 675 (1971); *People v Overby,* 42 Mich App 1 (1972).

to upset adverse verdicts after trials at which they had been represented by counsel.'" p 136.

The administration of these standards requires two primary determinations: (1) was the request unequivocal and (2) was the request offered prior to the commencement of trial. Although the request may be inferred from defendant's inartful communications with the trial court,[4] the court must be convinced defendant is in fact requesting the opportunity to appear *pro per* and not merely requesting a substitution of attorneys.[5] Our Courts have characterized requests made at the outset of trial,[6] inception of trial,[7] or just before trial[8] as timely requests. The timeliness of the request may be more precisely measured or determined by the time at which the jury is selected. *People v Kirkland,* 40 Mich App 22 (1972). Once this selection process has begun, defendant's right to self-representation becomes qualified and subject to a comparison of the disruptive effect to the trial and resulting prejudice to defendant. The record establishes defendant's timely and unequivocal request. If the inquiry ended here defendant would be entitled to self-representation.

Our inquiry proceeds to determine whether defendant's right to proceed *in propria persona,* once the procedural prerequisites are satisfied, is unlimited. The dilemma created for trial judges by a

[4] *People v Alexander, supra. Contrast, People v Hawkins,* 34 Mich App 60 (1971) (where the Court found that defendant's statement was not an inartful request); *People v McGath,* 31 Mich App 351 (1971) (where the Court found that the request was not inferable from the record).

[5] *People v Pruitt, supra; People v Armstrong, supra; People v Henderson, supra.*

[6] *People v Alexander, supra; People v Hawkins, supra.*

[7] *People v Payne, supra.*

[8] *People v Henderson, supra.*

defendant's request to represent himself was appropriately characterized in the following statement:

"Once again the failure of a trial court to navigate adroitly between the Scylla of denying a defendant the right to determine his own fate and the Charybdis of violating his right to counsel by acceptance of an ineffectual waiver has brought a prosecution to grief." *People v Carter,* 66 Cal 2d 666, 667; 58 Cal Rptr 614, 616; 427 P2d 214, 216 (1967).

Trial judges would never be able to successfully and judiciously resolve the serious confrontation between the right to self-representation and its constitutional counterpart of right to counsel if either right was unlimited. Since these rights are the mirror image of each other, they cannot be invoked simultaneously. The reliance upon one requires the forbearance of the other. To prevent defendant from placing trial judges into a "heads I win, tails you lose" situation, we find the right to self-representation limited in the following manner.

A defendant choosing to invoke his right to appear *pro per* must abandon his right to counsel. This waiver of counsel will not be deemed effective unless made voluntarily and intelligently. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938); *Moore v Michigan,* 355 US 155; 78 S Ct 191; 2 L Ed 2d 167 (1957). Defendant's competency is the necessary prerequisite to a valid waiver. *Pate v Robinson,* 383 US 375, 86 S Ct 836; 15 L Ed 2d 815 (1966); *Westbrook v Arizona,* 384 US 150; 86 S Ct 1320; 16 L Ed 2d 429 (1966). Thus, defendant's competency to waive counsel provides the tool for determining which right controls. If defendant is competent to execute a valid waiver, he may upon a timely and unequivocal request represent him-

self. Contrariwise, if defendant is incompetent to waive counsel his right to proceed *in pro per* is justifiably curtailed.

Our Court recently employed this approach in *People v Kirkland, supra.* The *Kirkland* panel denied defendant's timely request to represent himself, finding that this right may be limited "when it conflicts with the defendant's own interest in receiving a fair trial". The competency considerations of defendant's ancillary right to counsel were responsible for the limitations imposed by the *Kirkland* panel. This case is neither an aberration nor inconsistent with the case law cited above and relied upon by defendant, since it merely recognizes that a defendant must be competent to waive counsel before the door to his reciprocal right to self-representation is opened. The rules established by the cited authorities presupposes the existence of this competency. The determination of such competency is reserved to the sound discretion of the trial judge. Thus, defendant's allegation of error must rise or fall upon a finding of abuse.

Defendant argues that a determination that he was competent to stand trial following the requisite hearing and examination at the Forensic Center is dispositive of his competency to waive counsel. In spite of the seemingly logical appeal of this argument, we conclude that the level of competency for each inquiry is not identical as a matter of law. Finding the determinations directed at different goals and deserving individualized evaluation, we find that the trial judge is free to reach a different conclusion upon competency for different purposes. The California Courts have pursued this approach in analogous cases. In *People v Tracy,* 12 Cal App 3d 94; 90 Cal Rptr 375 (1970), defendant's

sanity was subject to question at the time defendant requested self-representation. Although the *Tracy* Court invalidated defendant's waiver of counsel taken prior to a determination of his competency, it recognized the difference between competency to stand trial and competency to waive counsel, stating:

"Even when a properly conducted sanity hearing justifiably results in a finding the defendant is presently sane * * * he should not be permitted to discharge his attorney and represent himself when, as here, the evidence shows *he is suffering from a mental illness which adversely affects his powers of reason, judgment and communication.*" p 103. (Emphasis added.)

A similar approach was utilized by the California Supreme Court in *People v Robles,* 2 Cal 3d 205; 85 Cal Rptr 166; 466 P2d 710 (1970). There defendant's sanity was a primary issue. After submission of the issue to the jury, it found that Robles was able to understand the nature of the charges against him and assist his attorney. Defendant was found guilty and the penalty phase of California's bifurcated trial process began. At this time defendant discharged his attorney and the trial judge permitted him to appear *pro per* in spite of his prior finding that defendant was incompetent to waive counsel at the guilt phase of trial. Upon appeal, the *Robles* Court reversed the judgment imposing the death penalty, stating:

"On the record before us there is no basis for a conclusion that Robles was competent to waive counsel and represent himself. Before trial, there had been a doubt as to competency even to stand trial. Although after a trial on the issue of his competency *it was determined that he could stand trial for the criminal offenses, the trial court determined,* toward the end of the guilt trial, *that Robles was not competent to defend*

*himself.* This determination of the trial court was over-whelmingly supported by evidence of Robles' limited education, his speech difficulties, his limited under-standing of his defense, and his offensive conduct dur-ing the trial." p 218. (Emphasis added.)

Significantly, the *Robles* Court recognized that defendant was coherent at the time of his request to represent himself but concluded that the evi-dence of defendant's disorganized and hostile be-havior during the presentation of his defense with-out counsel merely supported the trial court's previous determination of incompetency at the guilt phase. The *Robles* Court reached these con-clusions in spite of the jury's determination that defendant was competent to stand trial. We be-lieve that the *Robles* Court astutely recognized not only the complexities in determining a person's mental competency for particular purposes but also the fact that momentary stability may not be an accurate indicator of the mental stability of a person with a history or evidence of mental prob-lems.[9] The delicate determinations which must be made best lie with the trial judge who observes the defendant and evaluates the evidence firsthand.

The flexibility necessary to the preservation of defendant's rights and the fair administration of justice is provided by the American Bar Associa-tion Standards relating to the function of the trial judge. The relevant ABA Standards provide:

"C.2 The defendant's election to represent himself at trial.

"A defendant should be permitted at his election to proceed in the trial of his case without the assistance of

[9] *See, also, State v Martin,* 102 Ariz 142; 426 P2d 639, 643 (1967); *United States v Davis, supra,* and *State v Kolocotronis,* 73 Wash 2d 92; 436 P2d 774 (1968) (where the Court rejected defendant's argu-ment that competency to stand trial was the same as competency to conduct his defense).

counsel only after the court makes thorough inquiry and is satisfied that he

"(a) possesses the intelligence and capacity to appreciate the consequences of his decision; and

"(b) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case." The Judge's Role in Dealing With Trial Disruptions (An Advance Report of Part of Standards Relating to the Function of the Trial Judge), Standard C.2, p 10 (Tentative Draft, May 1971).[10]

This Court cited these standards with approval in *People v Kirkland, supra.*

In *People v Armstrong,* 274 Cal App 2d 297, 303; 79 Cal Rptr 223, 227 (1969), the Court similarly described the trial judge's inquiry:

"[T]he court must first make inquiry into his competency, and be reasonably satisfied of it, before accepting the accused's waiver of counsel. *'Competence' means more than a minimum of mental awareness and capability, however, and involves 'an intelligent conception of the consequences of his act'."* (Emphasis added.)

Although we need not compile a list of all the factors which will assist trial judges in determining whether defendant "appreciates the consequences of his decision", some guidance is provided by the Court in *People v Floyd,* 1 Cal 3d 694; 83 Cal Rptr 608; 464 P2d 64 (1970). The *Floyd* Court

[10] The standards for competency to stand trial are found in MCLA 767.27a; MSA 28.966(11), which in pertinent part provides:

"A person is incompetent to stand trial within the meaning of this section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, *or of assisting in his defense in a rational or reasonable manner."* (Emphasis added.)

This statute contains some of the elements utilized by the ABA Standards governing defendant's election to represent himself. However, the statute's emphasis upon defendant's ability to assist in his defense may well envisage a lesser degree of competency than that required by the ABA Standards.

indicated that the test is not defendant's legal acumen. Since the laymen's knowledge is never comparable to that of a trained professional, a defendant's right to self-representation would be effectively denied if the test were otherwise. Judge LESINSKI, dissenting in *People v Kirkland, supra,* appropriately adopted the following language from *People v Addison,* 256 Cal App 2d 18, 24; 63 Cal Rptr 626, 629 (1967):

> " 'If the defendant wants to venture into the unknown, he must be allowed to do so, if he is aware of the dangers that lurk therein. He need not demonstrate that he can meet them.' " p 36.

The distinction between a defendant being the master of his own fate and being incompetent to waive counsel is a fine line indeed.

The trial judge below adeptly traveled this thin line by conducting the appropriate inquiry into defendant's competency to waive counsel. The trial judge carefully scrutinized the forensic report, psychiatric evidence, and defendant's demonstrative behavior, including prior disruptive conduct before him. Based upon this evidence, the trial judge found that defendant did not possess the intelligence and capacity to appreciate the consequences of his decision to represent himself nor comprehend all of the facts essential to a broad understanding of the case necessary for such self-representation. Finding this decision supported by our review of the entire record, we affirm the trial judge's sound exercise of his discretion.

II. *Did the trial judge commit reversible error by denying defendant's request for a substitution of appointed counsel and a continuance?*

Our Courts have strictly adhered to the principle that an indigent does not have a right to

appointed counsel of his choice. *People v Kotek,* 306 Mich 408 (1943), *cert den,* 323 US 790; 65 S Ct 312; 89 L Ed 630 (1944); *People v LaMarr,* 1 Mich App 389 (1965); *People v Kerridge,* 20 Mich App 184 (1969); *People v Henderson,* 30 Mich App 675 (1971); *People v Garcia,* 39 Mich App 45 (1972). Yet, this principle cannot be used to disregard the denial of defendant's right to the effective assistance of counsel[11] occasioned by a complete breakdown in the attorney-client relationship. While our courts are often confronted with manufactured claims of dissatisfaction with court-appointed attorneys, we must be receptive to those cases in which a defendant has established a genuine basis for relief requiring the substitution of another court-appointed attorney. Recently, this Court in *People v Wilson,* 43 Mich App 459 (1972), held that a defendant was entitled to a substitution of appointed counsel when discharge of the first attorney is for "good cause" and does not disrupt the judicial process.[12] In *People v Charles O Williams,* 386 Mich 565 (1972), the Court found that an irreconcilable difference creating a bona fide dispute, and not a delaying tactic, justified the substitution of retained counsel. This rule is no less applicable to a defendant whose indigency makes him dependent upon the state since the resulting disenfranchisement of the right to effective assistance of counsel does not respect an artificial classification of wealth.

The precise nature of the conflict which will

---

[11] *See Williams v Beto,* 354 F2d 698 (CA 5, 1965), and *People v Degraffenreid,* 19 Mich App 702 (1969).

[12] The Federal courts' recognition of this right to the substitution of court-appointed attorneys for "good cause" in *United States v Burkeen,* 355 F2d 241 (CA 6, 1966), *cert den sub nom Matlock v United States,* 384 US 957; 86 S Ct 1582; 16 L Ed 2d 553 (1966), has been codified in 18 USC 3006A(c). *See United States v White,* 451 F2d 1225 (CA 6, 1971).

satisfy the "good cause" standard will depend upon the facts of each case. In *Williams,* the Court discovered that the bona fide dispute involved a difference of opinion between defendant and counsel on whether to call certain alibi witnesses. In *Wilson,* the breakdown of the attorney-client relationship was based upon allegations that counsel's performance was inadequate and both the communication and confidence between the parties had been destroyed.[13] The task of evaluating the nature and severity of the various claims of dissatisfaction and deterioration of the attorney-client relationship can be no less difficult than determining a defendant's competency to waive counsel and proceed *in pro per.* As recognized by the *Williams* Court, the primary competing considerations are whether the request is merely a delaying tactic and defendant is negligent in informing the trial judge of his desire for different counsel. Since the determination, like that of defendant's right to self-representation, necessitates firsthand observations, the decision is posited within the trial judge's sound discretion.

The related problem of securing a continuance cannot be divorced from the request for a substitution of counsel. It is likewise subject to a "good cause" standard.[14] Although continuances are controlled by the sound exercise of the trial judge's

---

[13] *See, e.g., People v Williams,* 2 Cal 3d 894; 88 Cal Rptr 208; 471 P2d 1008 (1970) (where the Court found that although a disagreement in trial tactics did not ipso facto require the substitution of attorneys, it can signal a breakdown in the attorney-client relationship of such a magnitude as to jeopardize defendant's right to the effective assistance of counsel). *Cf. People v Robles,* 2 Cal 3d 205; 85 Cal Rptr 166; 466 P2d 710 (1970) (where the Court recognized that disagreement as to whether defendant should testify may likewise signal a breakdown in the attorney-client relationship of such a magnitude as to jeopardize defendant's right to the effective assistance of counsel).

[14] MCLA 768.2; MSA 28.1025. *Cf.* GCR 1963, 503.

discretion,[15] the need for a continuance should not be seriously questioned if a substitution of attorneys is permitted.

In the present case defendant's request for both a substitution of appointed counsel and a continuance were denied. The reason offered for the first request was that the attorney was not handling the case properly since he only saw defendant twice at the county jail and he was not taking proper steps to preclude the introduction of the weapon allegedly used to perpetrate the crime. Since the prosecutor did not plan to introduce a weapon into evidence, any allegation in this regard is unmeritorious. Defendant's remaining complaints were primarily conclusions not supported by detailed facts. Defendant has the burden of presenting sufficient evidence of "good cause" to the trial judge. The entire record does not evidence a bona fide dispute as found in *Williams* or a destruction of the attorney-client relationship as found in *Wilson.* Since defendant was not entitled to a substitution of court-appointed counsel, the question of a continuance need not be reached. For these reasons, the trial judge's sound exercise of his discretion is affirmed.

III. *Was defendant denied the effective assistance of counsel?*

Defendant bases this allegation upon six enumerated failures of his trial counsel and the standards governing the ineffective assistance of counsel set forth by this Court in *People v Degraffenreid,* 19 Mich App 702 (1969). Judge LEVIN, now Justice LEVIN, offered two standards in *Degraffen-*

---

[15] *People v Charles O Williams,* 386 Mich 565 (1972); *People v Ciatti,* 17 Mich App 4 (1969); *People v Bruinsma,* 34 Mich App 167 (1971).

*reid* for evaluating such claims. First, the entire representation of defendant by his lawyer must show that:

" '[T]he trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.' " p 710.

In addition to the sham trial standard, defendant may be deprived of a fair trial when his constitutionally adequate lawyer makes a mistake or mistakes of such serious proportions that it may be decisive in obtaining defendant's conviction.[16]

Our evaluations of the deficiencies attributed to defendant's trial counsel fail to yield a violation of either facet of the *Degraffenreid* rule. Defense counsel's waiver of the production of witnesses and failure to request a cautionary instruction are considered matters of trial strategy, an inappropriate foundation for a claim of ineffective assistance of counsel. *People v Degraffenreid, supra; People v Crosby,* 19 Mich App 135 (1969); *People v Shipp,* 21 Mich App 415 (1970); *People v McGath,* 31 Mich App 351 (1971).[17] Defense counsel's failure to object to the challenged statements and conduct of the prosecutor was justified since the conduct and statements were either permissible or not prejudicial. The remaining allegations reveal several mistakes made by the defense attorney. However, these mistakes neither individually nor cumulatively were of such serious proportions as to be decisive in obtaining defendant's conviction. Finding neither test of the *Degraffenreid* rule satisfied by the record, we cannot conclude that defendant

---

[16] *See, e.g., People v Bottany,* 43 Mich App 375 (1972).

[17] *Cf. People v Jelks,* 33 Mich App 425 (1971); *People v Peabody,* 37 Mich App 87 (1971); *People v Burd,* 39 Mich App 22 (1972); *People v Budrick,* 40 Mich App 647 (1972).

was denied a fair trial by his attorney's imperfect representation.

IV. *Did the trial judge commit reversible error by sentencing defendant to "35 years to life" when the statute controlling the punishment of the offense for which defendant was convicted provides for a sentence of "life or any term of years"?*

The applicable statute in pertinent part provides:

"In no case can a valid sentence be hereafter made in which the maximum penalty shall be life imprisonment *with a minimum for a term of years included in the same sentence."* MCLA 769.9; MSA 28.1081. (Emphasis added.)

Defendant's sentence of "35 years to life" violates this unambiguous language. *People v Harper,* 39 Mich App 134 (1972). Accordingly, this invalid sentence is vacated and the cause is remanded for resentencing.

The remaining allegations that the prosecutor's statements were prejudicial and that the jury instructions given were improper, were not properly preserved for appeal by a timely objection. *People v Humphreys,* 24 Mich App 411 (1970); *People v Edwards,* 35 Mich App 233 (1971); and GCR 1963, 516.2; *People v Fry,* 27 Mich App 169 (1970); *People v McClure,* 29 Mich App 361 (1971).

Since the single issue necessitating appellate relief established the invalidity of defendant's sentence, we affirm his conviction and remand for resentencing.

Remanded for resentencing.

All concurred.