PEOPLE *v.* HENLEY.

1. CRIMINAL LAW — DEFENDANT'S RIGHT TO DISCHARGE COUNSEL — AUTHORITY OF TRIAL JUDGE.

Decision by the Court of Appeals that a criminal defendant has a constitutional and statutory right to discharge his attorney without cause and proceed with the trial in person is error where the appellate court failed to consider the authority of a trial judge when a defendant, after trial is under way, announces that he is discharging his attorney and means to represent himself, an error which if not corrected could lead to a regular practice of obstruction of criminal justice (Const 1963, art 1, § 13; CL 1948, § 763.1).

2. SAME—DEFENDANT'S RIGHT TO DO WITHOUT COUNSEL—DISCHARGE OF COUNSEL DURING TRIAL—AUTHORITY OF TRIAL JUDGES.

One charged with a crime has an absolute right to do without an attorney and conduct his own defense; however, the right to discharge counsel after trial has begun is a qualified one, and where the trial judge fears that to allow accused to discharge his defense counsel after trial has begun would lead to an outburst with which it would be hard to deal, the judge has the power to confine the accused to the capable protection of his attorney (Const 1963, art 1, § 13; CL 1948, § 763.1).

3. SAME — DOUBLE JEOPARDY — MOTION TO DISMISS — APPOINTED COUNSEL—COURT OF APPEALS.

Defendant's motion *in propria persona,* made pending people's appeal, to dismiss the criminal charge against him on the ground he was subjected to double jeopardy upon being

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 309–311.
 7 Am Jur 2d, Attorneys § 139.
[2] Right of defendant in criminal case to conduct defense in person, or to participate with counsel. 77 ALR2d 1233.
[3] 21 Am Jur 2d, Criminal Law § 322.

retried after a mistrial had been declared, may be treated as an application for leave to file a cross-appeal where the issue of double jeopardy was raised at trial; however, if no brief in support of the cross-appeal is filed, the record may be remanded to the Court of Appeals for ascertainment of facts which will fairly frame the issue of double jeopardy for judicial determination, and the Court of Appeals must appoint duly compensated *amicus* counsel so that the double jeopardy issue may be properly presented and judicially determined in the Court of Appeals.

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and J. H. Gillis and Fitzgerald, JJ., reversing and remanding Recorder's Court, O'Hara (John P.), J. Submitted April 9, 1969. (Calendar No. 2, Docket No. 51,422.) Decided August 4, 1969. Rehearing denied October 6, 1969.

2 Mich App 54, reversed.

G. T. Henley was convicted of assault with intent to rape and attempt to procure an act of gross indecency between male and female persons. Defendant appealed to the Court of Appeals. Reversed and remanded. The people's application for leave to appeal was granted. Reversed and remanded for appointment of counsel by Court of Appeals.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo C. Marchand, Arthur Bishop,* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*G. T. Henley, in propria persona,* on application for rehearing.

*Erwin B. Ellmann (Edward Wise,* of counsel), for American Civil Liberties Union of Michigan.

BLACK, J.   We adopt the factual review which
Judge J. H. GILLIS prepared for Division 1 (*People
v. Henley* [1965], 2 Mich App 54, 55–58).   The re-
view follows:

"The defendant G. T. Henley was arraigned on
a warrant June 20, 1963 containing two counts:
(1) assault with intent to commit rape (CLS 1961,
§ 750.85 [Stat Ann 1962 Rev § 28.280]), and (2)
attempt to procure an act of gross indecency be-
tween male and female persons (CLS 1961, § 750-
.338b [Stat Ann 1954 Rev § 28.570(2)]).   An attor-
ney was assigned by the court to represent the
defendant and an examination was conducted in
recorder's court on July 11, 1963.   The examining
magistrate, Judge Elvin L. Davenport, ordered the
prosecuting attorney to file a petition for a sanity
hearing pursuant to CLS 1961, § 767.27 (Stat Ann
1963 Cum Supp § 28.967).   Three physicians ex-
amined the defendant and reported to the court on
August 7, 1963 that he was not psychotic, was free
from mental defect, able to understand the charges
pending against him, and able to assist counsel in
his defense.   On October 24, 1963, defendant ad-
vised the court that he desired to engage his own
counsel, did not want assigned counsel and the
court permitted assigned counsel to withdraw from
the case.   Several adjournments of the case were
granted in order that defendant might retain coun-
sel.

"On December 9, 1963 the defendant, not having
hired counsel, was offered another assigned counsel
by the then presiding judge of the recorder's court,
but the defendant refused to sign the required af-
fidavit and petition for appointment of counsel.
Three days later Judge John P. Scallen assigned
an attorney to represent the defendant.   On the
following day trial commenced.   A mistrial was de-
clared in the early stages of that trial, and the as-
signed counsel was permitted to withdraw from the
case after defendant requested that he be dis-

charged.  Judge Scallen then appointed a new sanity
commission consisting of three additional physicians
who reported on January 8, 1964, the same findings
reported by the prior sanity commission.  On De-
cember 24, 1963 another attorney was retained by
the defendant, and this attorney remained with the
defendant throughout the balance of the proceed-
ings in this cause.  This trial attorney, having re-
ceived only a small retainer initially, was appointed
and compensated as an assigned counsel.

"A new trial was commenced on May 27, 1964 and
on June 4, 1964 the jury returned a verdict of guilty
on both counts set forth in the information.  The
lengthy transcript covering this trial is replete with
attempts by the defendant to dominate the court
proceedings.  The record clearly shows that the
defendant continually interrupted the trial judge,
insisted on instructing his counsel in so loud a tone
that it could be heard by members of the jury in
the court, interrupted the testimony of various wit-
nesses, conducted oratorical speeches directed to the
jury protesting his innocence, and insisted that he
was being deprived of his constitutional rights.  At
other times he would direct remarks to the specta-
tors sitting in the rear of the courtroom contend-
ing that his rights were being violated and requested
someone in the audience to send news reporters or
representatives of various organizations to see him.
After one court recess, the defendant while in a
jail cell adjacent to the courtroom removed all of
his clothing and refused to come out for further
proceedings.

"It was thereafter necessary for the court to
order the defendant forcefully clothed and brought
into the courtroom where he was shackled to a chair.
This action by the trial court seemed only to in-
tensify the contemptuous attitude displayed by the
defendant.  The trial judge, who displayed the pa-
tience of Job, did everything possible throughout
the trial to control the defendant's actions except
to order the defendant gagged.  See *People* v. *La-*

*Marr* (1965), 1 Mich App 389, and citations contained therein for authority of the court to shackle a defendant.

"The conduct of the defendant may well have prejudiced the jury but this defendant cannot complain inasmuch as he cannot claim the benefit of error that he himself occasioned.

"After the trial was well under way, the defendant advised the court that he had 'fired' his attorney and was going to represent himself. The court advised the defendant to sit down and instructed the defense counsel to continue with the trial. On many occasions thereafter the defendant advised the court that he desired to represent himself and did not want his attorney speaking in his behalf.

"The defendant alleges many grounds of reversible error, but only one merits consideration. Was it reversible error for the trial court to refuse to permit the defendant to discharge his attorney and proceed with the trial representing himself?"

Despite Mr. Henley's capricious, contemptuous, and self-prejudicing conduct, Division 1 held that the constitutional and statutory right of one to defend himself is a veritable absolute,[1] even in the factual situation described by Judge J. H. GILLIS. The panel went on to this conclusion:

"The record in the instant case fails to disclose any basis which would warrant the defendant to discharge his counsel and, in fact, defense counsel did an admirable job under trying circumstances. However, under our Constitution, statutes and case law, defendant had the right to discharge his attorney and proceed with the trial in his own proper person."

The opinion of the panel does not discuss the authority of a trial judge, confronted after "the trial

---

[1] See Const 1963, art 1, § 13, and CL 1948, § 763.1 (Stat Ann 1954 Rev § 28.854).

was well under way" with an announcement by the defendant that he has fired his attorney and means to proceed in his own proper person. This we conclude was error, error which unless corrected would surely invite into regular practice the obstruction of criminal justice by the calculated manufacture of new hindrances and novel specifications of error, such as Mr. Henley has alleged in the not very thin file of correspondence he has carried on with the clerk since his appeal to the Court of Appeals was submitted in 1965.

The error thus ascertained finds support in what we believe is the weight of authority headed by *United States* v. *Bentvena* (CA 2, 1963), 319 F2d 916. To render fully precise the sense and the rule we approve and now apply, the following connected passage is quoted from *Bentvena* (pp 937, 938):

"3. Mirra

"Mirra contends that he was denied the right to act as his own counsel by the trial court's denial of his request to discharge his defense counsel and conduct the cross-examination of the chief government witness, Smith, himself. Mirra had been represented with great skill throughout the trial by appointed counsel. Mirra indicated no dissatisfaction with his counsel and apparently relied solely on his right to represent himself. One charged with crime has an absolute right to do without an attorney and conduct his own defense (28 USC § 1654), but that is quite different from the right to discharge counsel after trial has begun. This latter right is a qualified one. *United States, ex rel. Hyde,* v. *McMann* [CA 2, 1959], 263 F2d 940, certiorari denied (1959), 360 US 937 (79 S Ct 1462, 3 L Ed 2d 1549); *United States* v. *Dennis, supra;*[2] *United States* v. *Mitchell* (CA 2, 1943), 138 F2d 831, certiorari denied (1944), 321 US 794 (64 S Ct 785, 88 L Ed 1083);

---

[2] (CA 2, 1950), 183 F2d 201, affirmed 1951, 341 US 494 (71 S Ct 857, 95 L Ed 1137).

*United States* v. *Gutterman* (CA 2, 1945), 147 F2d 540 (157 ALR 1221). The contention of Mirra is much like the claim that was raised in *United States* v. *Dennis, supra.* We there said:

" 'If the judge feared that the result would be, as he said, another of those "outbursts" which he had found it so hard to deal with, it appears to us that he was within his powers to confine Davis to the exceptionally capable protection of Mr. Sacher. To deprive a judge of that much control over such an issue would play into the hands of any accused who might seize the opportunity still further to confuse a trial, already much confounded.' 183 F2d at 234.

"The record discloses that Mirra had excellent representation by counsel who took advantage of every opportunity by motion, examination and cross-examination to protect his interests."

To the same point as *Bentvena* are *People* v. *Warner* (1955), 134 Cal App 2d 829 (286 P2d 560); *People* v. *Marcus* (1955), 133 Cal App 2d 579 (284 P2d 848); *State* v. *Dennis* (1965), 45 NJ 195 (212 A2d 19); and *State* v. *White* (1965), 86 NJ Super 410 (207 A2d 178). We commend for careful reading the pertinent rules of discretion which, in the last cited case, appear in the 15th paragraph of Judge Labrecque's opinion.

Another question remains for consideration. It turns upon what usually appears when an accused insists upon being his own appellate lawyer.

Division 1 passed of course only upon the question considered above. We granted leave to review May 11, 1966 (377 Mich 709). The people's brief as appellant on appeal, was filed September 30, 1966. While the appeal remained pending (for want of a brief for or on behalf of Mr. Henley as appellee), Mr. Henley filed May 20, 1968 a motion *in propria persona* to dismiss the people's cause on ground that

he had been subjected to double jeopardy when he was tried after a mistrial of the prior trial was declared. Finding that the question of double jeopardy was raised in the trial court, however vaguely, an order entered here July 26, 1968, treating the May 20 motion as an application by Mr. Henley for leave to file a cross-appeal for the purpose of bringing up the question of double jeopardy. Since then, however, no brief in support of his cross-appeal having been received from or on behalf of Mr. Henley, we have decided to remand the record to the Court of Appeals for ascertainment therefrom of facts which will fairly frame the alleged issue of double jeopardy and for a judicial determination thereof. It is so ordered.

The present judgment of the Court of Appeals is reversed. Upon remand that Court will appoint counsel *amicus* so that the question of double jeopardy may be presented properly and determined judicially. The Court of Appeals will provide that counsel *amicus* is compensated out of its budget for services rendered pursuant to the order appointing him.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.