*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OMAR LATEEF LATHON-BEY,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350613
Macomb Circuit Court
LC No. 2019-000223-FH

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of possession with intent to deliver 50 to 449 grams of cocaine, second offense, MCL 333.7401(2)(a)(iii); MCL 333.7413. The trial court sentenced defendant to serve 12 years to 40 years in prison. We affirm.

## I. BACKGROUND

Defendant was surveilled after local police received information from the FBI that he sold drugs from his home. The police arranged two drug buys with defendant and observed him leave and enter his residence before and after the buys. Subsequently, the police executed a search warrant at defendant's residence. Approximately 80 grams of cocaine were seized.

Throughout the pre-trial proceedings in this case, the defendant informed the court that he desired self-representation. The court granted that request on January 28, 2019, but appointed advisory counsel. The defendant declined advisory counsel under circumstances that will be discussed in greater detail in this opinion. On the day the defendant was scheduled to commence jury selection, the defendant indicated that he was not prepared to proceed to trial due to stated issues with discovery. The court made inquiry regarding the discovery issues, found them to be specious, and appointed counsel to commence trial as defendant's counsel. The court stated :

> All right. Please be seated. All right. I want to put on the record, the defendant, [],
> I know that you do not want Mr. Freers as your attorney. I understand that. I made
> the decision that he is your attorney, due to the fact that I feel that there would be
> disruption to the Court, in light of the fact (a) and, I did adopt the arguments by the

-1-

People, that you refused discovery when provided it, and you actually said today you didn't know what was going on. Despite not accepting the discovery, except not knowing what was going, you insisted on representing yourself.

Defendant subsequently declined to communicate with appointed counsel, interrupted voir dire multiple times, and stated in the presence of the venirepersons that the appointed counsel did not represent him. The court excluded defendant from the courtroom but facilitated his ability to view the trial remotely. A jury was selected, trial commenced and all of the evidence was submitted on that day. The defendant was offered the opportunity to attend the remaining portion of the trial but declined to do so. The jury convicted him as stated above and this appeal ensued. All of the appeal issues arise from the termination of his right to self-representation.

## II. SELF-REPRESENTATION

We turn to the defendant's argument that the trial court violated his right to self-representation when it appointed counsel over his objections. We find no error.

## A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's "factual findings surrounding a defendant's waiver of his right to counsel." *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). However, review is de novo "to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts". *Id*.

## B. ANALYSIS

The Sixth Amendment right to counsel, US Const, Am VI, implies the right of self-representation, and in Michigan, the right of self-representation is explicitly recognized by our constitution and by statute. Const 1963, art 1, § 13; MCL 763.1; *Russell*, 471 Mich at 187-188. When a defendant initially requests to proceed as his own counsel, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. *Russell*, 471 Mich at 190, citing *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). Additionally, MCR 6.005(D)(1) outlines procedures concerning a defendant's waiver of the right to an attorney. MCR 6.005(D)(1) prohibits a court from granting a defendant's waiver request without first advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation. *People v Williams*, 470 Mich 634, 642-643; 683 NW2d 597 (2004). A defendant may only enter into self-representation fully aware of the dangers of acting as his own counsel, or "with his eyes open." *People v Russell*, 254 Mich App 11, 15; 656 NW2d 817 (2002).

Defendant argues that the trial court "fail[ed] to engage, on the record, in a methodical assessment of the wisdom of self-representation." When a defendant seeks to represent himself, trial courts must substantially comply with the substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding

that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. *People v Adkins (After Remand)*, 452 Mich 702, 726-727; 551 NW2d 108 (1996). Here, defendant unequivocally requested self-representation several times and rejected the assistance of trial counsel. The trial court complied with MCR 6.005(D)(1) by advising defendant of the sentence for his crime and by warning him that he would be required to comply with the court rules. However, the trial court did not engage in discussion "and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures," as required by *Adkins*, 452 Mich at 726-727. However, the trial court did not ultimately grant defendant's motion for self-representation. Thus, the trial court was not required to complete the procedures for an effective waiver.

As for the right to self-representation, when a defendant requests to proceed as his own counsel, part of the trial court's responsibility is to determine that "the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Russell*, 471 Mich at 190, citing *Anderson*, 398 Mich at 367-368. A defendant has a qualified right of self-representation but the trial court should exercise discretion. *Anderson*, 398 Mich at 367, quoting *People v Henley*, 382 Mich 143, 148-149; 169 NW2d 299 (1969). There "is a long-held principle that courts are to make every reasonable presumption against the waiver of a fundamental constitutional right," including the waiver of the right to the assistance of counsel. *Russell*, 471 Mich at 188. However, an unwarranted deprivation of a defendant's Sixth Amendment right of self-representation constitutes a structural error and requires automatic reversal. *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), citing *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984).

In this case, the trial court considered defendant's desire to waive his right to counsel throughout several pretrial proceedings, informing him of some of the consequences, and allowing him to self-represent until jury selection. However, the trial court ultimately found that it would be too disruptive to allow defendant to represent himself. The trial court cited defendant's confusion regarding what his stand-by counsel's motion to suppress was, and his delay of the trial because he had refused to accept discovery materials from plaintiff. Additionally, defendant had filed motions that did not comport with the court rules. Considerations including "a governmental interest in 'ensuring the integrity and efficiency of the trial' may in some instances outweigh the defendant's constitutional right to act as his own counsel." *Russell*, 471 Mich at 189. In this case, the trial court did not clearly err by finding that defendant's self-representation would unduly disrupt and interfere with his trial, and properly denied defendant's request to waive his right to counsel.

## III. RIGHT TO ATTEND TRIAL

Next, defendant argues that the trial court violated his due-process rights by excluding him from the trial. There was no objection to defendant's removal. We find no plain error.

## A. STANDARD OF REVIEW

Unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness,

-3-

integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*.

## B. ANALYSIS

A defendant has a right to be present at the trial as "impliedly guaranteed by the federal and state Confrontation Clauses, US Const, Am VI; Const 1963, art 1, § 20, the Due Process Clauses, US Const, Am XIV; Const 1963, art 1, § 17, and the right to an impartial jury, Const 1963, art 1, § 20." *People v Kammeraad*, 307 Mich App 98, 116-117; 858 NW2d 490 (2014), citing *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984). A defendant also has a statutory right to be present at a "stage of trial where the defendant's substantial rights might be adversely affected." *People v Powell*, 303 Mich App 271, 275; 842 NW2d 538 (2013), citing *Mallory,* 421 Mich at 247; see also MCL 768.3 ("No person indicted for a felony shall be tried unless personally present during the trial."). However, when "the defendant's conduct during trial is so disorderly or disruptive that his trial cannot be continued while he is present, defendant may lose his right to be present at a jury view entirely." *Mallory*, 421 Mich at 248, citing *Illinois v Allen*, 397 US 337, 342-343; 90 S Ct 1057; 25 L Ed 2d 353 (1970). After a trial judge has warned the defendant "that he will be removed if he continues his disruptive behavior," and the defendant continues to act in a disruptive way to the extent that the trial "cannot be carried on" with the defendant present, the defendant can lose the right to be physically present at trial. *Kammeraad*, 307 Mich App at 118, citing *Allen*, 397 US at 343.

In this case, prior to jury selection defendant's trial counsel told the trial court that defendant had twice walked away when he approached defendant. Defendant indicated that he did not understand the suppression issue and nonetheless might waive any objection to the warrant. The trial court asked defendant whether he wanted to waive the motion to suppress, and defendant responded: "No, I'd rather the case be dismissed -- demand that it be dismissed." The prosecutor began speaking, and defendant interjected: "For the record, Judge, you are compelled to abide by section 241 and section 242 of the United States Code of Law, Title 18, Chapter 13, let the record reflect." During jury selection, defendant interrupted his trial counsel's question to a potential juror by stating that trial counsel was speaking only for the court because he was not defendant's attorney. Later, during a break in jury selection, the trial court explained to defendant the reasons for having counsel represent him, at which point defendant brought up the "affidavits" and expressed that he did not know why he was there or what was going on. The trial court warned defendant that he would be removed if he continued to interrupt the trial while the jury was present, and restated that he would remove defendant if there was another outburst so that the trial could proceed in an orderly fashion.

Subsequently, as defendant's trial counsel began to conduct voir dire, defendant interjected that his attorney was not his attorney and began speaking, at which point the trial court dismissed the jury. Defendant's trial counsel commented that the jury appeared "disgusted" with defendant's behavior. The trial court discussed with the parties when a new jury should be selected. The trial court informed defendant that he was holding him in contempt for being disruptive, and was removing him to watch the rest of the trial via video. The trial court cited the fact that defendant had continued to disrupt the proceedings despite the trial court's warning, and that the court did not believe that defendant would behave so as to ensure an orderly trial.

The next day, a corrections officer testified that defendant had refused his efforts to transport defendant to trial that day. The trial court then discussed *Kammeraad*, and concluded that "he was given an opportunity to come to court today. He has refused to come to court and in the court's opinion, has voluntarily waived his presence here today for the trial." The trial then continued and concluded the following day. The corrections officer testified on the final day of trial that defendant had again declined to be transported to the court, and did not wish to testify.

Defendant argues that the trial court violated his due-process rights by excluding him from his trial. However, the trial court warned defendant, and then excluded him only after defendant demonstrated that he could not comply with the trial court's order to not disrupt the proceedings. Defendant's behavior may not have been as egregious as the defendant's in *Kammeraad*, 307 Mich App at 120, but he was persistently disruptive and unable to conform his behavior to ensure an orderly trial. Defendant expressed that he did not understand the proceedings and he may not have been able to understand how his outbursts were disruptive. Regardless, the record supported the trial court's finding that defendant had been disruptive and was likely to remain disruptive. "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Id*. at 121, quoting *Allen*, 397 US at 343.

More significant, however, is that the trial court did not exclude defendant from his trial. Defendant was excused at the end of the first day of trial, and only scheduling matters were discussed in his absence. The following two days of trial, defendant was afforded an opportunity to attend but refused to come to the courthouse. The record does not clarify whether, once there, defendant would have been allowed to attend his trial in person or by video. But by refusing to come to the courthouse, defendant declined to attend in any manner until his sentencing.

"[A] defendant may waive both his statutory and constitutional right to be present during his trial." *Kammeraad*, 307 Mich App at 117 (quotation marks and citations omitted). The waiver must be "personal and informed." *People v Gonzalez-Raymundo*, 308 Mich App 175, 187-188; 862 NW2d 657 (2014), lv den 447 Mich 998 (2015). However, "[a] valid waiver arises when the defendant specifically knows of the right to be present and intentionally abandons the protection of that right." *People v Palmerton*, 200 Mich App 302, 303; 503 NW2d 663 (1993). A defendant may also waive his right to attend the trial by acting " 'so disorderly or disruptive that his trial cannot be continued while he is present.' " *People v Buie*, 298 Mich App 50, 57; 825 NW2d 361 (2012), quoting *Mallory*, 421 Mich. at 248. In this case, defendant knew that he was invited to come to court on the second and third days of trial and declined to be present. He therefore waived his right to attend his trial by declining to attend.

## IV. ANONYMOUS JURY

Next, defendant argues that the trial court violated his due-process rights by empaneling an "anonymous jury" since the jurors were referred to by number rather than by name. Defendant did not object and, as an unpreserved constitutional claim, our review is for plain error. *Carines*, 460 Mich at 763.

This Court has concluded that a "defendant's due process rights were not violated by using juror numbers instead of names at trial." *People v Williams*, 241 Mich App 519, 525; 616 NW2d

710 (2000). An " 'anonymous jury' is an extreme measure, in which 'certain biographical information about potential jurors' is withheld, even from the parties," in contrast to circumstances when jurors are "merely referred to at trial by number rather than by name." *Id*. at 523, citing *United States v Branch*, 91 F 3d 699, 723 (CA 5, 1996). The dangers of empaneling an "anonymous jury" are that a defendant could be denied "a meaningful examination of the jury," or the presumption of innocence could be compromised. *Williams*, 241 Mich App at 522-523. Thus, to show that defendant's rights were violated, the record must demonstrate such a compromise or that "the parties have had information withheld from them, thus preventing meaningful voir dire." *Id*. at 523. In this case, although the jurors were referred to only by number throughout jury selection and trial, during voir dire the potential jurors were asked about employment, family composition, family experience with addiction, relationships with anyone involved in the trial, medical concerns, and previous exposure to the criminal justice system.

In *Williams*, this Court determined that there was "nothing in the record to support the conclusion that any information was actually withheld from the parties," other than, at most, "the names of the jurors." *Id*. at 523. This Court noted that the "voir dire conducted by both parties" indicated that information had not been withheld, and that the defendant had access to the juror questionnaires required by MCR 2.510, which contained biographical information. Likewise, in this case the voir dire covered a number of personal topics for the potential jurors. There was no indication that the parties did not have access to the juror questionnaires. The record contains no evidence that information about the jurors, other than their names, was withheld. Consequently, defendant has not shown how his ability to examine the potential jurors was compromised in any way.

With regard to the presumption of innocence, in *Williams* this Court found "no suggestion that jurors understood the use of numbers rather than names to be anything out of the ordinary. Thus, there was no suggestion that defendant's trial was being handled in a special way, with the resulting implication that he was generally dangerous or guilty as charged." *Id*. at 534. Likewise, there is no indication in this case that the use of numbers alerted the jury that defendant represented a danger. There was no reference to any reason for using numbers, leaving the jury to presume that it was standard procedure. Defendant has not demonstrated that identifying jurors by numbers, rather than name, interfered with his presumption of innocence. Conversely, the trial court twice instructed the jury, including during jury selection, that defendant was presumed innocent, and "jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## V. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to convict him of the crime. We disagree.

Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v*

*Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from the evidence, are considered to determine whether the evidence was sufficient to sustain the conviction. *Hardiman*, 466 Mich at 429.

In order to convict defendant, the prosecution had to prove: (1) that the recovered substance was cocaine, (2) that the cocaine was in a mixture that weighed more than 50 grams but less than 450 grams, (3) that defendant was not authorized to possess the substance and, (4) that the defendant knowingly possessed the cocaine with the intent to deliver. *People v Acosta*, 153 Mich App 504, 511; 396 NW2d 463 (1986); MCL 333.7401(2)(a)(iii). Defendant argues that the evidence was insufficient to demonstrate beyond a reasonable doubt that he possessed and intended to deliver the substance found at the residence.

In this case, Detective Mark Larkin learned that defendant had listed the home that was searched as his address when previously reporting a crime, and that the address was registered to defendant's wife. Detective Larkin observed defendant, in June and November 2018, entering and leaving the residence alone, and using a key to enter after observing defendant participate in a drug transaction. A search warrant was executed at the residence on November 8, 2018. Defendant was detained after leaving the residence shortly before the search, and was found to have $400 on his person.

During the search, officers found mail in the name of defendant and his wife in the home. Also, a large amount of money was found in a bedroom, along with packaging, including baggies, and men's clothing thought to fit defendant's stocky build. In a kitchen cabinet, Detective Larkin found 80 grams of a substance in four bags, along with a digital scale and a razor blade with residue of the substance. He also found plastic bags in the kitchen. The substance and residue on the scale was field-tested, confirming it was cocaine. The substance in the four bags was determined to be cocaine, and the large bag contained 54.5 grams of the substance.

In order to demonstrate that defendant possessed the cocaine, the prosecutor had to prove that defendant had "dominion or right of control over the drug with knowledge of its presence and character." *People v Meshell*, 265 Mich App 616, 621-622; 696 NW2d 754 (2005); *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017) (quotation marks and citations omitted). A defendant's presence alone is not "sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established." *Meshell*, 265 Mich App at 622, citing *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992). However, "[a]ctual physical possession is not required to meet the possession element." *People v Brown*, 279 Mich App 116, 136; 755 NW2d 664 (2008), citing *Wolfe,* 440 Mich at 519-520. A defendant may actually possess the substance, or may have constructive possession of the substance. *Meshell*, 265 Mich App at 622, citing *Wolfe,* 440 Mich at 519-520. "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *Meshell*, 265 Mich App at 622, citing *Wolfe,* 440 Mich at 521. Possession may be demonstrated with "[c]ircumstantial evidence and the reasonable inferences that arise from the evidence." *Brown*, 279 Mich App 116, 136-137, citing *People v Nunez*, 242 Mich App 610, 615-616; 619 NW2d 550 (2000).

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, the evidence was sufficient to prove that defendant possessed the cocaine. He argues that someone else was present when the home was searched, that he was merely in the proximity of the home, and that there was no forensic evidence connecting him to the cocaine found in the home. However, it is reasonable to infer that defendant resided in the home containing the cocaine because he was seen with the key, was seen entering and leaving on multiple occasions, and was seen leaving shortly before he was detained, which was shortly before the search. With regard to whether he was aware of and had control over the cocaine, he was seen selling narcotics after leaving the home. In addition, a significant amount of money was found on his person when he was searched, and a large amount of money with bags that are used to package narcotics were found in the bedroom with male clothing, suggesting that defendant was selling the cocaine. "Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the narcotics." *Brown*, 279 Mich App at 137, citing *Wolfe*, 440 Mich at 521. Although not overwhelming, the totality of the circumstances demonstrates a sufficient nexus between defendant and the cocaine to give rise to an inference of possession.

Regarding the intent to deliver, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Thus, intent to deliver may be inferred from circumstantial evidence, including "the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v Robar*, 321 Mich App 106, 126; 910 NW2d 328 (2017), citing *Wolfe*, 440 Mich at 524.

Defendant possessed 80 grams of cocaine. He argues that only one bag was confirmed to contain cocaine. However, the bag that was tested weighed over 54 grams, and the remaining bags had preliminarily tested positive for cocaine. Detective Jason Figurski testified that the very large amount of cocaine seized, along with a scale with significant residue, as well as packaging, indicated that the drugs were intended for sales. Detective Larkin explained that cocaine is typically sold in small amounts, as a half-gram for $50, or a gram for $100. He explained that the razor blade would be used to divide the cocaine, and that the scale appeared to have been used to weigh the cocaine, which would have been placed in the baggies that they found in another cabinet. Detective Larkin's opinion was that possessing an amount of cocaine as high as 80 grams, and a scale for weighing it, indicated that it was possessed for the purpose of selling it. Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, the evidence was sufficient to prove that defendant intended to distribute the cocaine. He possessed a large amount of the drug, had instruments of drug trafficking in his possession, such as scales, a razor blade coated in cocaine residue, and small bags, and he had a large amount of money. This evidence gave rise to an inference that he had the intent to deliver.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Next defendant argues in a Standard 4 brief that his trial counsel provided ineffective assistance. Since there was no evidentiary hearing on this issue in the trial court, review is limited to errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo. *Id.* at 242.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). The defendant must also show that the resultant proceedings were "fundamentally unfair or unreliable." *Id*.

Defendant first argues that his trial counsel provided ineffective assistance by failing to challenge the search warrant. The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures and provides that no warrants shall issue without probable cause. US Const, Am IV. The Michigan constitutional protection is substantially the same. Const 1963, art 1, § 11. The exclusionary rule, with several exceptions, bars the introduction into evidence of materials seized and observations made during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003).

Defendant's trial counsel had informed the trial court that he was planning to bring a motion to suppress the evidence gathered as a result of the warrant. However, defendant objected and, the following day, counsel informed the court that defendant had instructed him not to file the motion. Thus, defendant waived this issue for appeal. A defendant waives an issue by intentionally relinquishing or abandoning a known right. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). A waiver extinguishes any error, leaving nothing for this Court to review. *Id*.

Defendant also takes issue with his counsel's failure to call an expert to rebut the prosecution expert's testimony that it was consistent with laboratory policy to only test the larger (54-gram) bag of cocaine seized from defendant's residence because preliminary tests showed all four bags seized had the same chemicals. Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). To overcome the presumption of sound trial strategy, the defendant must show that the failure to prepare for trial or interview witnesses resulted in counsel's ignorance of valuable evidence that would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 252-253; 581

NW2d 1 (1997), citing *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990). The decision regarding whether to call an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). In many instances it is not necessary to retain an expert witness because cross-examination may suffice to attack the testimony of the opposing witness. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011).

Defendant does not explain how an expert would have contradicted the expert's testimony regarding the lab policy or how attacking the testimony would have benefited defendant. Presumably, it was beneficial to defendant that the expert could not definitively testify that the other bags of a substance found in his home were confirmed to contain cocaine. On cross-examination, defendant's trial attorney was able to elicit from the prosecution's expert that the substance in the bags varied in color, implying that they did not contain the same substance, and that she could not confirm that the other bags contained cocaine. The expert also testified on cross-examination that others had access to her work space between the times she performed preliminary tests on all the bags and the test confirming the substance on the larger bag. Defendant has not established that it was an unreasonable trial strategy for his counsel to use cross-examination, rather than a competing expert.

Finally, defendant argues that his trial counsel failed to question Detective Larkin about inconsistencies between his testimony and the contents of the affidavit for the search warrant. "Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014), citing *People v Trakhtenberg*, 493 Mich 38, 54-55; 826 NW2d 136 (2012). Prejudice may result where trial counsel fails to introduce evidence that would impeach a witness and corroborate the defendant's testimony. *Trakhtenberg*, 493 Mich at 57. In this case, Detective Larkin testified that the police conducted surveillance of defendant after receiving a tip from the FBI, and that he observed defendant in June and November 2018 at arranged drug buys. He testified that the first time he saw defendant leave and return on foot, and that the second time, he saw him leave in his vehicle. Defendant notes that the search warrant affidavit stated that a Detective Vasilovski had learned from a confidential informant that defendant was selling drugs, and that during the two surveilled drug buys it was not mentioned that defendant drove a vehicle. He suggests that these discrepancies would have impeached Detective Larkin.

However, defendant could not impeach Detective Larkin on cross-examination about the differences in his testimony with statements in the warrant affidavit because he was not the author of the affidavit. Moreover, even if the contents of the warrant affidavit had been admitted into evidence, it is not clear that they contradicted Detective Larkin's testimony. The confidential informant was not identified, so the origin of the tip was not necessarily inconsistent with Detective Larkin's statement that he learned of defendant from the FBI. Further, Detective Vasilovski did not specify in the affidavit which mode of transportation defendant utilized to travel to and from the home to the drug transactions. Finally, the affidavit emphasized that Detective Vasilovski had seen defendant participate in two drug transactions, which defendant's trial counsel certainly did not wish to highlight, while Detective Larkin's testimony only mentioned arranging a drug transaction with defendant once in the context of establishing that defendant resided at the home that was searched. The purpose of the affidavit was to establish probable cause that defendant possessed drugs at his home, whereas the purpose of Detective Larkin's testimony about

-10-

surveilling defendant was to establish that he was in control of the residence that contained the drugs. Defendant has not demonstrated that his trial counsel could have impeached Detective Larkin's testimony, or that it was not reasonable trial strategy to avoid highlighting the contents of the affidavit.

## VII. SPEEDY TRIAL

Finally, defendant argues in his Standard 4 brief that unexplained adjournments violated his right to a speedy trial. This issue was not preserved and we therefore review it for plain error, *Carines*, 460 Mich at 763, which defendant has failed to establish.

A guarantee of the right to a speedy criminal trial is found in both the United States and Michigan Constitutions. In Michigan, it is enforced by "statute and by court rule." US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). To determine whether a defendant has been denied the right to a speedy trial, the following four factors, derived from *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), are addressed: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999); *Williams*, 475 Mich at 261-262. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261, citing *United States v Marion,* 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971). It is presumed that a defendant is prejudiced after a delay of 18 months, when "the burden shifts to the prosecution to show that there was no injury" and there is "an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted).

In this case, there were nearly nine months between defendant's November 2018 notice of arraignment and the July 30, 2019 beginning of his trial. Thus, the time awaiting trial does not afford defendant the presumption of prejudice. Moreover, defendant did not assert his right to a speedy trial below, and defendant does not allege any prejudice stemming from any adjournments.

Nonetheless, defendant argues that there were repeated and unexplained adjournments. MCL 768.2 provides that adjournments should not be granted "except for good cause shown." In this case, the adjournments of several hearings in the pretrial process appear to have been related to the difficulty presented by defendant's self-representation and need for advisory counsel. Defendant had three attorneys at different times in the pretrial process and insisted on representing himself throughout. The adjournments appear to have all been warranted, and cannot be attributed to the trial court or prosecutor. Because any delay in the trial can be attributed to changes in defendant's representation, and defendant has not pleaded prejudice, he has not demonstrated error with the adjournments or that his right to a speedy trial has been violated.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens